IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| **Abbeville First Bank,** | Civil Action No. 8:23-CV-00661-JDA |
| **Plaintiff,** | |
| | AMENDED SUMMONS |
| vs. | |
| **Hoover Treated Wood Products, Inc.,** | |
| **Defendant.** | |

**TO: THE DEFENDANT ABOVE NAMED:**

**YOU ARE HEREBY SUMMONED** and required to answer the Second Amended Complaint in this action of which a copy is herewith served upon you and to serve a copy of your Answer on the subscriber at his office, 100 East Pickens Street, P. O. Box 805, Abbeville, South Carolina, 29620 within fourteen (14) days after the service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff will apply to the Court for relief demanded in the Complaint.

                   HITE & STONE

BY: *s/ Thomas E. Hite, III*
     THOMAS E. HITE, III
     10O EAST PICKENS STREET
     P. O. BOX 805
     ABBEVILLE, SC 29620
     (864) 366-5400 TELEPHONE
     (864) 366-2638 FACSIMILE
     ATTORNEY FOR THE PLAINTIFF

ABBEVILLE, SOUTH CAROLINA
February 15, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| **Abbeville First Bank,** | Civil Action No. 8:23-CV-00661-JDA |
| **Plaintiff,** | |
| vs. | **SECOND AMENDED COMPLAINT** (Jury Trial Demanded) |
| **Hoover Treated Wood Products, Inc.,** | |
| **Defendant.** | |

Pursuant to Order of this Honorable Court dated February 5, 2024, Plaintiff Abbeville First Bank (hereinafter "Bank") submits its Second Amended Complaint in regard to the above-referenced action. As such, the Bank, complaining of Defendant Hoover Treated Wood Products, Inc. (hereinafter "Hoover") would respectfully show unto the Court as follows:

**JURISDICTION AND VENUE**

1. Plaintiff Bank is a body corporate, specifically a mutual savings bank, established under the laws of the State of South Carolina, and is the owner and operator of a banking facility situated in Abbeville County, South Carolina.

2. Defendant Hoover is a Delaware corporation whose principal place of business is unknown.

3. Defendant Hoover and/or its predecessors in interest, at all times relevant hereto, conducted continuous and systematic business in the State of South Carolina.

4. Venue is proper since the most substantial part of the alleged acts or omissions giving rise to the litigation occurred in Abbeville, South Carolina, and the subject property is located there.

**FACTUAL BACKGROUND**

5.      On June 29, 2021, Bank employees heard a loud popping noise emanating from the attic/roof area of the main lobby of the bank building. In an abundance of caution, Bank President Andy Timmerman ("Timmerman") called a professional structural engineer to evaluate the facility due to safety concerns.

6.      Upon examination of the roof trusses located in the building's attic area, the engineer noted a series of roof trusses with fractured and broken wooden members. The wooden members at issue all contained a stamp "Hoover Treated Wood Products," indicating the lumber used in the trusses had been treated by a fire-retardant manufactured by Hoover during the 1970s and 1980s. The engineer's findings were included in a report dated June 30, 2021 and provided to Timmerman. This report served as the initial notification to the Bank regarding the connection between the Hoover treated wood and the structural damage observed in the trusses and bank building.

7.      Further investigation by the engineer and contractor revealed the damaged wood at issue was centralized to the lobby and drive-thru areas of the building, and no other areas. Significantly, in the fall of 1987, the Bank expanded onto its existing building, adding the lobby and drive-thru areas. The time period of the building expansion exactly coincides with the timeframe in which Hoover formulated, utilized, advertised, marketed and sold its fire-retardant wood treatment known as "Pro-Tex."

8.      Upon information and belief, Pro-Tex is a chemical mixture containing harmful and injury producing substances which have been proved to cause degradation and deterioration in the lumber on which it has been applied, resulting in structural damage.

9.      After determining that the wood at issue contained fire retardant, the engineer for

the Bank expanded his investigation into the structural integrity of all of the framing systems, ultimately determining that the severity of the roof truss failures required immediate shoring. The engineer noted that the entire area of the building from the 1987 expansion was affected, to include not only the main lobby area but also the teller's area and bank drive-thru area, all areas of the building which were heavily utilized by customers.

10. The state fire marshall condemned the area due to the severity of the risk of harm, so Timmerman had to close the lobby and drive-through areas of the building, move employees to alternate locations within the building, and completely rework banking operations while the repairs to the roof were underway.

11. The Bank hired additional engineers and experts to evaluate the lumber at issue, and all agreed that the damages to the roof trussing system were a direct result of the fire-retardant manufactured by Defendant Hoover and known as "Pro-Tex."

12. The damage to the strength properties of wood treated with Pro-Tex was latent. Thus, the property damage suffered by the Plaintiff was by its nature not discoverable in the exercise of reasonable diligence at the time of its occurrence. Furthermore, Plaintiff's property damage was the result of the exposure of the wood in the roofing system and sheathing to a toxic, harmful or injury producing substance (Pro-Tex) over a long period of time.

13. Prior to July 1, 2021, Defendant Hoover was well aware of the defects of Pro-Tex fire-retardant treatment yet, despite having such knowledge, purposefully failed to disclose this information to Plaintiff or to the general public, thus concealing Plaintiff's causes of action against Defendant including, but not limited to, causes of action for gross negligence and recklessness.

14. Because of the extremely hazardous and unsafe conditions created by the actions of Defendant, the Plaintiff had to cease business operations in a large portion of the bank building,

perform immediate repairs on its roofing system, to include completely replacing the beaming system in the roof throughout the entire left side of its building, including the lobby, teller space, and drive-thru area, and also repairing many residual building areas and systems, all at great monetary cost to the Bank and severe interruption of Bank's business.

15. In 2020, the Bank had completed a large renovation to its building, which included new paint, flooring, and lighting in the main lobby and teller area. Because of the damage to the roof and resulting repairs, all of the new paint, flooring and lighting in these areas had to be replaced again, causing further expenditures by the Bank.

16. The aforesaid damages are the proximate result of the acts and/or omissions of Defendant, and thus, are the responsibility and liability of Defendant.

## **FOR A FIRST CAUSE OF ACTION**
### (*Negligence, Gross Negligence, Recklessness, and Willfulness*)

17. The Plaintiff incorporates the above allegations as if fully repeated verbatim herein.

18. At all times relevant hereto, the Defendant Hoover had a duty to the Bank to exercise reasonable care to design, manufacture, and distribute a safe product. Hoover further had a duty to warn users, including the Bank, when it became aware of potential dangers of the product.

19. Specifically, in the manufacture of its product, Pro-Tex, Hoover owed a duty of due care and caution to all foreseeable users and consumers of its product, including the Bank, in the following particulars:

    (a) In formulating, marketing, distributing, licensing, and selling the product;

    (b) In observing and complying with the requirements of all applicable statutes, regulations, and ordinances;

    (c) In ensuring that the product met or exceeded industry standards; and

    (d) In alerting consumers and end-users of the defects in the Pro-Tex product through a meaningful product recall or other notice of defects to the

marketplace.

20. Defendant Hoover breached the above duties by manufacturing, applying, and selling a defective product and by failing to notify the industry and its customers, including the Bank, of the failures of the product. In further violation of said duties, the Defendant was negligent, grossly negligent, reckless, and/or willful in the following:

(a) The formulation, testing, marketing, distribution, licensing and sale of the fire-retardant treatment, Pro-Tex, which was defective and unreasonably dangerous for its foreseeable use because of its propensity to cause structural lumber to lose strength and elasticity and become less resistant to impact loads, and to cause metal truss connection plates to corrode;

(b) The formulation, testing, marketing, distribution, licensing and sale of the fire-retardant product which was defective and unreasonably dangerous for its foreseeable use because of its hygroscopic nature, which increases the tendency of wooden structural members to undergo acid hydrolysis and to cause corrosion of metal truss connection plates;

(c) The failure to properly test the respective formulation to properly evaluate its effect on structural lumber, and metal truss connection plates under foreseeable conditions for extended periods of time;

(d) In advertising, marketing, distributing, and selling the Pro-Tex fire retardant treatment to third-parties including, without limit: building code officials, architects, builders, truss manufacturers and end users when the Defendant knew or should have known that the Pro-Tex product was defective and unsuitable for use under foreseeable conditions in roofing systems in South Carolina;

(e) The failure to provide proper and adequate specifications in connection with the advertising, marketing, distribution, licensing and sale of the Pro-Tex product setting forth the necessary and appropriate conditions under which the Pro-Tex fire retardant treatment could be safely utilized;

(f) The failure to provide adequate and proper warnings to purchasers and end-users of the Pro-Tex product of the hazards associated with the use of the fire-retardant treatment under foreseeable conditions in roofing systems in South Carolina;

(g) The failure to provide proper and adequate updates, information, and warnings to customers, after the sale of the product, of the hazards associated with the use of Pro-Tex under foreseeable conditions in roofing

    systems in South Carolina, as that information became known or available; and

  (h) The failure to properly hire, train, and supervise individuals who, in turn, would communicate with and supervise licensees for the proper application of Pro-Tex chemicals.

21. Plaintiff is entitled to recover all actual damages it suffered as the direct and proximate result of the negligent, willful, reckless, grossly negligent acts and/or omissions of Defendant and the Defendant's defective product. Further, Plaintiff is entitled to recover punitive damages due to Defendant Hoover's gross negligence.

**FOR A SECOND CAUSE OF ACTION**

**(*Products Liability/Strict Liability  §15-73-10 et. seq.*)**

22. The Plaintiff incorporates the above allegations as if fully repeated verbatim herein.

23. Defendant Hoover formulated, tested, manufactured and sold Pro-Tex, a product marketed as a fire-retardant used to treat lumber.

24. When Abbeville First renovated and expanded its facilities in 1987, the Bank used Hoover's product as it was when manufactured, distributed and marketed by Defendants, and the product reached the Bank without any substantial change.

25. Defendant Hoover sold its Pro-Tex product despite its knowledge that the product was defective and over time threatened the integrity of the lumber on which it was applied, creating serious safety hazards for its consumers.

26. South Carolina Code of Laws §15-73-10, *et. seq.,* imposes strict liability on Defendant Hoover for its defective product.  Hoover's actions in selling the Pro-Tex product in a defective condition, which was unreasonably dangerous, and which reached the Bank without substantial change in the condition, constituted a violation of *S.C. Code Ann.* § 15-73-20, and therefore, Hoover is strictly liable to the Bank in tort.

27. As a direct and proximate result of the defective design, manufacture and the absence of adequate warnings, the Bank has suffered extensive damages to its trusses, building, and property all of which caused substantial expense to the bank for demolition, repair and construction costs, loss of use, business interruption, engineering costs, and other costs and attorney's fees.

## FOR A THIRD CAUSE OF ACTION
### (Product Liability- Breach of Warranty: Implied Warranty of Merchantability § 36-2-314)

28. The Plaintiff incorporates the above allegations as if fully repeated verbatim herein.

29. At all times relevant hereto, the Defendant was in the business of formulating, marketing, distributing, and selling the Pro-Tex fire retardant treatment in South Carolina and other states.

30. Defendant Hoover held itself out as an experienced manufacturer and supplier of fire-retardant products for wood capable of withstanding fire, and comparable and equally consistent, if not superior, to wood products within the marketplace that did not contain such fire-retardant treatment.

31. Defendant Hoover sold the Pro-Tex fire retardant treatment throughout the marketplace, and therefore, a warranty that its product is merchantable is implied in its sale.

32. Plaintiff's agents and or representatives purchased Defendant's product to use in the expansion of its building, relying on the product's reputation in the marketplace and its inducements as a basis of the bargain.

33. The Defendant impliedly warranted that the Pro-Tex fire retardant treatment would be of merchantable quality for treating wood to be used, among other things, in roof trusses for use in commercial buildings located in South Carolina, and that the product would stand the test of time.

34. After experiencing almost a complete failure of its roofing system, the Bank, through

its investigation, learned that the deterioration and splintering of the wood in its roof framing/truss system was directly caused by the wood's long term exposure to Hoover's fire-retardant product.

35. The materials manufactured, marketed, sold and distributed by Hoover were clearly not merchantable, and were in fact dangerous. The Defendant materially breached its warranty of merchantability as the Pro-Tex fire retardant treatment product was defective and was not of a reasonably merchantable quality.

36. As a direct and proximate result of the Defendant's breach of the warranty of merchantability, the Plaintiff has been injured and is entitled to all damages.

## FOR A FOURTH CAUSE OF ACTION
**(Product Liability- Breach of Warranty: Implied Warranty of Fitness for a Particular Purpose § 36-2-315)**

37. The Plaintiff incorporates the above allegations as if fully repeated verbatim herein.

38. Defendant Hoover marketed, advertised and sold its product for the specific use of protecting wood used in building structures, to include roof truss and framing systems, from dangers of fire.

39. Defendant Hoover held itself out as being experienced and having extensive expertise within the area of fire-retardant wood products, which could be used in the construction of roofing systems on commercial structures.

40. Defendant Hoover knew that consumers, like the Bank, would rely on Hoover's expertise and skill when selecting the best wood products to use in construction projects and that it was a basis for their bargain to purchase.

41. Hoover's implied warranty of merchantability for its product has never been excluded or modified.

42. When Bank and/or its agents purchased the wood products used for its expansion

they had been treated with Hoover's Pro Tex and the product was in the same condition as when it left the hands of Hoover.

43. After experiencing almost a complete failure of its roofing system, the Bank, through its investigation, learned that the deterioration and splintering of the wood in its roof framing/truss system was directly caused by the wood's long term exposure to Hoover's fire-retardant product.

44. Defendant Hoover's product was not fit for the purpose in which it was intended and sold, and the product unquestionably failed and caused the failure of the trusses and building.

45. Defendant breached its implied warranty of fitness for a particular purpose and otherwise misrepresented the fitness of its product for the particular purpose intended.

46. As a result of Defendant's breach of the implied warranty of fitness for a particular purpose, the Bank has suffered extensive damages in that it was required to completely replace its roofing system in almost half of its building and has incurred substantial clean up and remodeling costs.

### FOR A FIFTH CAUSE OF ACTION
**(Violation of the South Carolina Unfair Trade Practices Act*)*

47. The Plaintiff incorporates the above allegations as if fully repeated verbatim herein.

48. Defendant Hoover engaged in unfair and deceptive act and practices in the testing, development, manufacturing, promoting, advertising, offering for sale, distributing, and supplying materially defective fire-retardant treated lumber to the construction industry and to the general public, all while claiming its product was superior to non-treated lumber and capable of withstanding conditions over a long period of time as would non-treated lumber used in the same manner. Hoover knew or should have known that the product was defective and would ultimately cause severe

deterioration of lumber, creating catastrophic and dangerous conditions to the structures in which the lumber was used.

49. Long after complaints about its product arose, Defendant Hoover continued distributing its Pro-Tex product, failed to notify the owners or installers through the streams of commerce, failed to remedy the dangerous condition, failed to respond to notices of the failure of the product, avoided responsibility by intentionally delaying and/or avoiding repairs of the product, when Hoover knew or reasonably should have known that Pro-Tex was the cause of serious damage, and was unsuitable for the advertised uses by the consuming public, all which constituted unfair and deceptive trade practices as prohibited by the South Carolina Unfair Trade Practices Act as codified at S.C. Code Ann. §§ 39-5-10, et. seq.

50. Defendant Hoover willingly and knowingly continues to fail to notify users of its product, to include consumers, prior purchasers, like the Bank, and end users, of the dangers created by the product and potential for severe damage and personal injury caused by the latent defects of the product. These failures to warn create a direct impact on the general public, putting the public at risk of harm.

51. The Defendant's actions were deceptive, unfair, capable of repetition, and were injurious to the public and are in violation of South Carolina law.

52. As a direct and proximate result of the Defendant's actions, the Bank suffered injury, to include having incurred a huge monetary loss necessitated by the repairs to its building, and is entitled to treble damages, attorney's fees and costs, and all other damages under the Act.

WHEREFORE, on all causes of action listed above, the Plaintiff Bank prays:

a. for judgment in its favor against Defendant for actual, incidental, consequential and treble damages (per UTPA only) on all causes of action;

b. for judgment in its favor against Defendant for punitive damages;

c. for judgment in its favor against Defendant for litigation costs, attorneys' fees, any other disbursements, as allowed by law; and

d. for such other and further relief as this Court deems proper and just under the circumstances of this case.

                                  HITE & STONE

BY:   **_s/ Thomas E. Hite, III_**
THOMAS E. HITE, III (Fed Bar # 10657)
HEATHER HITE STONE
10O EAST PICKENS STREET
P. O. BOX 805
ABBEVILLE, SC 29620
(864) 366-5400 TELEPHONE
(864) 366-2638 FACSIMILE
ATTORNEYS FOR THE PLAINTIFF

ABBEVILLE, SOUTH CAROLINA
February 15, 2024